J-S24023-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PATRICK MCGUIRE | : | |
| | : | |
| Appellant | : | No. 991 WDA 2023 |

Appeal from the Judgment of Sentence Entered July 25, 2023
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0008262-2022

BEFORE: BOWES, J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY SULLIVAN, J.: **FILED: August 30, 2024**

Patrick McGuire ("McGuire") appeals from the judgment of sentence imposed following his conviction for defiant trespass and related offenses.[1] We affirm.

The trial court summarized the factual background of this appeal as follows:

> The Hysyde Lounge . . is a drinking establishment which has both indoor and outdoor seating areas. [McGuire] has been at the bar on various prior occasions. On the evening of September 24, 2022, [McGuire] became unruly while inside and was verbally abusive to the other patrons. After observing this behavior, the owner of the bar asked [McGuire] to leave. [McGuire] did not leave the inside area immediately upon being asked, but did ultimately exit the [bar]. While outside the bar, [McGuire] made

---

[*] Former Justice specially assigned to the Superior Court.

[1] *See* 18 Pa.C.S.A. § 3503(b)(1)(i); *see also* 18 Pa.C.S.A. §§ 2706(a)(1), 5503(a)(4).

degrading remarks about the owner and her establishment and engaged in an altercation with other patrons. At that point[,] the police were summoned. Despite being told to leave, [McGuire] returned later with what appeared to be something behind his back.

Trial Court Opinion, 11/29/23, at 1-2. Police took McGuire into custody when he was across the street from the bar.

McGuire filed a petition for writ of *habeas corpus*, and the trial court held a hearing on July 25, 2023. The Commonwealth presented testimony from the owner of the Hysyde Lounge, Sameera Philylaw ("Philylaw"), a security guard, Erica Jennings ("Jennings"), and a police officer who responded to the report of an altercation at the bar, Officer Dominic Bertan ("Officer Bertan").

Philylaw testified that on the evening of the incident, she was inside the bar and went to diffuse a dispute between McGuire and two other patrons over McGuire's use of the "N-word" in a "predominantly black bar." **See** N.T., 7/25/23, at 19, 21.[2] Philylaw asked McGuire to leave, but he did not immediately comply. As Philylaw testified:

> I asked [] McGuire if he would leave. Because he is a regular, I don't want to have issues. I asked if he would leave, and it took him a minute, a while[,] to get out the door for us to leave. Once he got out the door, he didn't leave the bar. I was asking him to. So words started between him and patrons.

*Id*. at 19. Philylaw stated that McGuire started calling her a "B" and the "N-word" and made degrading remarks about her and the bar. *Id*. at 20. Philylaw again asked McGuire to leave. **See id**.

---

[2] The criminal complaint indicates that McGuire is a white male.

Jennings, the bar's security guard, was outside when the dispute started inside of the bar. Jennings testified that Philylaw and McGuire came outside from the bar and were standing between the bar's outside tables. *See id*. at 12. Philylaw and McGuire were exchanging words, and McGuire was saying, "F you this, I'm not leaving . . .." *Id*. at 5. Jennings tried to talk to McGuire about what happened, but McGuire cursed at Jennings and continued to yell at others. *Id*. at 6. Jennings told him to "go home." *Id*. However, McGuire did not leave, and the altercation between McGuire and other patrons continued. *See id*. at 6, 11. Philylaw testified that she tried staying between McGuire and the other patrons to protect McGuire. *See id*. at 12, 21. The altercation, however, turned physical. *See id*. at 7 (Jennings indicating that McGuire was "swinging on patrons as he thought they were coming to fight him"), 23-24 (Philylaw indicating that when McGuire continued calling her names, a patron reached around her and hit him). Philylaw called the police, but McGuire left the area before the police arrived. *See id*. at 29-30. Jennings testified that after the police left, McGuire returned, approached the bar while holding something behind his back, and stated, "I got something for you n[-words]." *See id*. at 7. Fearing for their patrons' safety, Jennings and Philylaw instructed everyone to go inside, and Philylaw again called the police. *See id*. at 22. Philylaw stated McGuire "came across our premises," and that she heard him say he had a bat. *See id*. at 33. She further confirmed, "He did come on to the premises . . .." *Id*. Police returned, detained McGuire across the street from the bar, and found a bat near him. *See id*. at 36.

The trial court denied the *habeas corpus* petition, in part, and the parties agreed to a stipulated non-jury trial on the remaining charges.[3] The Commonwealth moved to incorporate the testimony from the *habeas corpus* hearing, and McGuire moved into evidence a body camera recording and his medical records. Following closing arguments, the trial court found McGuire guilty of one count each of defiant trespass, terroristic threats (against Jennings), public drunkenness, and disorderly conduct.[4] The trial court sentenced him that same day to an aggregate term of one year of probation. McGuire filed a timely notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925.

McGuire raises the following issue for our review:

I.      Whether the evidence was sufficient, as a matter of law, to convict [] McGuire of defiant trespass where it failed to prove, beyond a reasonable doubt, that he entered or remained on property "knowing" that he was not entitled or privileged to do so?

McGuire's Brief at 5 (some capitalization omitted).

In his sole issue on review, McGuire challenges the sufficiency of the evidence supporting his conviction for defiant trespass and focuses on the *mens rea* element of that offense.

Our standard of review of a sufficiency claim is as follows:

_____

[3] The trial court granted the *habeas corpus* petition in part and dismissed one count of terroristic threats (against Philylaw) and two counts of simple assault.

[4] The trial court found McGuire not guilty on two separate counts of disorderly conduct.

- 4 -

[W]e evaluate the record in the light most favorable to the verdict winner[,] giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused[] beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. [T]he facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence. Any doubt about the defendant's guilt is to be resolved by the facts finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

***Commonwealth v. Franklin***, 69 A.3d 719, 722 (Pa. Super. 2013) (citations and quotations omitted). The fact-finder is free to believe all, part, or none of the evidence presented, and it determines the credibility of the witnesses. ***Commonwealth v. Boyd***, 73 A.3d 1269, 1274 (Pa. Super. 2013) (*en banc*).

The Crimes Code defines defiant trespass as follows: "A person commits an offense if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by: [] actual communication to the actor . . . ." 18 Pa.C.S.A. § 3503(b)(1)(i). Additionally, the Crimes Code defines "knowing" as follows:

A person acts knowingly with respect to a material element of an offense when: (i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and (ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause that result.

18 Pa.C.S.A. § 302(b)(2).

McGuire argues that the evidence was insufficient for the trial court to convict him of defiant trespass because the Commonwealth failed to prove,

beyond reasonable doubt, he entered or remained at Hysyde Lounge knowing that he was not entitled or privileged to do so. **See** McGuire's Brief at 15. McGuire argues that this Court's decision in **Commonwealth v. Wanner**, 158 A.3d 714 (Pa. Super. 2017) is instructive, and that a careful comparison of **Wanner** and the present case demonstrates why he lacked the requisite *mens rea* to support his conviction of defiant trespass. **See id**. McGuire contends he was a regular at the Hysyde Lounge, he did not violently refuse Philyaw's command to leave, and he eventually left the bar. **See id**. at 21.[5] McGuire further asserts he reasonably believed Philylaw's command to leave only precluded him from going back **inside** the bar that night, and he had a good-

_____

[5] In **Wanner**, the appellant and a co-defendant entered a fur shop under false pretenses of being legitimate customers. **See Wanner**, 158 A.3d at 716. When the two confronted the owner about the business of selling animal furs, the owner asked them to leave. **See id**. They refused to leave despite multiple requests from the shop owner. **See id**. A scuffle ensued, during which the owner took Wanner's and her co-defendant's phones. The owner ushered them outside into a lobby, locked her door, and called the police. **See id**. Wanner and her co-defendant remained in the lobby until the police arrived. **See id**. Following her conviction for defiant trespass, Wanner challenged the sufficiency of the evidence on appeal, and this Court affirmed her conviction because Wanner and her co-defendant "(i) remained inside the fur store without the right to do so; (ii) knowing that they did not have the right to do so; and (iii) after the owner of the store directly and repeatedly told the two women to leave the store." **Id**. at 719. McGuire attempts to distinguish **Wanner** by asserting that he did not enter the bar under false pretenses, and he left the bar without violently opposing Philylaw. **See** McGuire's Brief at 21. He further asserts that unlike the store owner in Wanner, Philylaw did not gave him clear notice that she wanted him "completely gone" from the bar's premises. **See id**.

faith basis to believe he was permitted to return to **outside** of the bar. **See id**.[6]

In response to McGuire's claim that the evidence was insufficient to convict him of defiant trespass, the trial court concluded:

> In this case, it was reasonable to conclude from the evidence presented that [McGuire] remained at the [bar] without the right to do so, knowing that he did not have the right to do so, and after the owner of the [bar] directly and repeatedly requested that he leave. While he did leave briefly, [McGuire] did return to the premises.
>
> As such, at the non-jury trial, the evidence was sufficient to have the fact finder conclude beyond a reasonable doubt that [McGuire] had violated 18 Pa.C.S.A § 3503(b)(1)(i) . . ..

Trial Court Opinion, 11/29/23, at 3. The trial court thus concluded there was sufficient evidence to convict McGuire of defiant trespass on two bases: (1) McGuire remained at the bar despite repeated requests that he leave; and (2) while McGuire eventually left the bar, he returned. **See id**.

_____

[6] McGuire argues Philylaw only precluded him going back inside the bar that night, citing the following portion her testimony:

> Well, initially I just told him to leave. I didn't say he was no longer welcome back at the bar. His wife has frequented our bar regularly. I asked him to leave for the night. A[s] you could tell he was intoxicated, and I didn't want things to get worse. I was asking him to leave for the night.

McGuire's Brief at 21 (quoting N.T., 7/25/23, at 21-22).

To the extent McGuire asserts his initial refusal to leave the bar did not constitute defiant trespass, no relief is due.[7] Although McGuire may have entered the Hysyde Lounge with license and a legitimate purpose, once Philylaw and Jennings gave multiple instructions to McGuire that he needed to leave, McGuire had proper notice that he was no longer licensed or privileged to remain at the bar. Contrary to McGuire's argument, **Wanner** supports McGuire's conviction: the evidence that McGuire refused multiple commands to leave was alone sufficient to establish his conviction for defiant trespass. **See Wanner**, 158 A.3d at 719 (holding the crime for defiant trespass was complete once the owner of a store directly and repeatedly told Wanner to leave). Moreover, a violent refusal to leave is not an element of defiant trespass. **See id**. at 718. Philylaw's and Jennings's testimony, in any event, undermines his suggestion that his departure from the bar was peaceful, as they described how his refusal to leave was accompanied by his continued yelling and use of racial epithets, which caused further disputes and a physical scuffle with patrons. **See** N.T., 7/25/23, at 6, 23-24. Thus, there was sufficient evidence to convict McGuire of defiant trespass based on his initial refusal to leave the bar. **See Wanner**, 158 A.3d at 719.

The trial court also committed no error in concluding that there was sufficient evidence to convict McGuire of defiant trespass because he returned

---

[7] It is unclear whether McGuire challenges the sufficiency of the evidence concerning his state of mind when initially refusing to leave the bar, or when returning to the bar. We separately consider each of the trial court's reasons for convicting McGuire of defiant trespass.

to the bar.  *See* Trial Court Opinion, 11/29/23, at 3.  McGuire concedes that he had actual notice not to return that night but argues Philylaw's orders only prohibited him from going back inside the bar.  *See* McGuire's Brief at 23. Nothing in Philylaw's or Jennings's commands "to go home for the night" limited their notice of trespass to the inside of the bar.  N.T., 7/25/23, at 21-22; *see also id*. at 5 (indicating Jennings told McGuire to "go home" when he was outside of the bar).  Moreover, based upon the evidence that Philylaw and Jennings commanded McGuire to leave when he was inside the bar *and* on the bar's outdoor premises, it was reasonable for the trial court, as finder of fact, to infer that McGuire knew he was not permitted to return to the inside of the bar *or* its outdoor premises.  *see id*. at 19, 21-24; *see also id*. at 5, 7, 12.  The evidence that McGuire left after the altercation turned physical and then returned to instigate a further confrontation undermines his claim that he was unaware his return to the bar's outside premises was unlicensed or unprivileged or he acted in a good-faith belief he was permitted to be there. *See id*. at 7 (Jennings indicating that McGuire re-approached the bar with something behind his back and saying that he "had something for you"), 33 (Philylaw indicating that McGuire re-entered the outside premises of the bar), 36 (indicating that police found a bat near McGuire when he was detained across the street from the bar).[8]  Thus, we discern no merit to McGuire's claim

---

[8] While McGuire emphasizes that he remained outside the bar when he returned, he does not contest Philylaw's testimony that he "came on" to the bar's outdoor premises.  *See* N.T., 7/25/23, at 33.

and conclude the evidence was sufficient to prove that McGuire knew he was not privileged or licensed to return to the bar.

In sum, viewing the evidence, along with all reasonable inferences therefrom, in the light most favorable to the Commonwealth, we conclude that the Commonwealth presented sufficient evidence to sustain McGuire's conviction for defiant trespass where the evidence showed McGuire: (1) knowingly remained on Hysyde Lounge property without a license or privilege to do so; and (2) returned to the Hysyde Lounge knowing he was defying repeated notices to leave for the night.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 8/30/2024